AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>HP Touchsmart Computer (SN 3CR8511161), White<br>Samsung Galaxy Phone (SN 256691517509643137),<br>Seagate Hard Drive (SN 5VJ2X1X5) | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.   MJ18-045 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The Subject Devices as further described in Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC § 2252 (a)(2) | Receipt or Distribution of Child Pornography |
| Title 18, USC § 2252(a)(4)(B) | Possession of Child Pornography |
| Title 18, USC § 2251(a) | Production of Child Pornography |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SPECIAL AGENT TOBY LEDGERWOOD, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2-2-18

*Judge's signature*

City and state: BELLINGHAM, WASHINGTON

PAULA L. MCCANDLIS, U.S. MAGISTRATE JUDGE
*Printed name and title*

2017R01278

## ATTACHMENT A

### Description of Property to be Searched

The SUBJECT DEVICES, more particularly described below, which are currently in the custody of Homeland Security Investigations in Blaine, Washington:

a.   HP Touchsmart computer Serial Number (SN) 3CR8511161

b.   White Samsung Galaxy Phone SN 256691517509643137

c.   Seagate Hard Drive SN 5VJ2X1X5

ATTACHMENT A - 1
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2251(a) (Production of Child Pornography, 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES:

1. Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media or other evidence of the creation of such visual depictions.

2. Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3. Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4. All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5. Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6. Any non-digital recording devices and non-digital media capable of storing images and videos.

7. Digital devices and/or their components, which include, but are not limited to:

    a. Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above;

    b. Any digital devices used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

ATTACHMENT B - 1
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        c.     Any magnetic, electronic, or optical storage device capable of
2 storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or
3 memory buffers, smart cards, PC cards, memory sticks, flashdrives, USB/thumb drives,
4 camera memory cards, media cards, electronic notebooks, and personal digital assistants;

5        d.     Any documentation, operating logs and reference manuals regarding
6 the operation of the digital device or software;

7        e.     Any applications, utility programs, compilers, interpreters, and other
8 software used to facilitate direct or indirect communication with the computer hardware,
9 storage devices, or data to be searched;

10        f.     Any physical keys, encryption devices, dongles and similar physical
11 items that are necessary to gain access to the computer equipment, storage devices or
12 data; and

13        g.     Any passwords, password files, test keys, encryption codes or other
14 information necessary to access the computer equipment, storage devices or data;

15    **8.**     Evidence of who used, owned or controlled any seized digital device(s) at
16 the time the things described in this warrant were created, edited, or deleted, such as logs,
17 registry entries, saved user names and passwords, documents, and browsing history;

18    **9.**     Evidence of malware that would allow others to control any seized digital
19 device(s) such as viruses, Trojan horses, and other forms of malicious software, as well
20 as evidence of the presence or absence of security software designed to detect malware;
21 as well as evidence of the lack of such malware;

22    **10.**   Evidence of the attachment to the digital device(s) of other storage devices
23 or similar containers for electronic evidence;

24    **11.**   Evidence of counter-forensic programs (and associated data) that are
25 designed to eliminate data from a digital device;

26    **12.**   Evidence of times the digital device(s) was used;

27    **13.**   Any other ESI from the digital device(s) necessary to understand how the
28 digital device was used, the purpose of its use, who used it, and when.

ATTACHMENT B - 2
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    14.    Records and things evidencing the use of the IP address 73.53.83.83 (the

2   SUBJECT IP ADDRESS) including:

3        a.    Routers, modems, and network equipment used to connect

4   computers to the Internet;

5        b.    Records of Internet Protocol (IP) addresses used;

6        c.    Records of Internet activity, including firewall logs, caches, browser

7   history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

8   entered into any Internet search engine, and records of user-typed web addresses.

9

10   **The seizure of digital devices and/or their components as set forth herein is
    specifically authorized by this search warrant, not only to the extent that such**

11   **digital devices constitute instrumentalities of the criminal activity described above,
    but also for the purpose of the conducting off-site examinations of their contents for**

12   **evidence, instrumentalities, or fruits of the aforementioned crimes.**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 3
USAO #2017R01278

# AFFIDAVIT

STATE OF WASHINGTON      )

                                      )    ss

COUNTY OF WHATCOM       )

      I, Toby Ledgerwood, being duly sworn on oath, depose and state:

## I. INTRODUCTION AND AGENT BACKGROUND

      1.     I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Assistant Special Agent in Charge (ASAC) Blaine, Washington, field office. I have been employed as an HSI Special Agent since 2006. Prior to this assignment, I worked as a United States Customs Inspector from 2002 to 2006. In my capacity as a Special Agent, I am responsible for conducting investigations into the numerous federal laws enforced by HSI. Since 2013, I have investigated criminal violations relating to child exploitation and child pornography, including violations pertaining to the unlawful production, importation, distribution, receipt, attempted receipt, and possession of child pornography and material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2251, 2252(a), and 2252A(a). I am a graduate of the Federal Law Enforcement Training Center (FLETC), HSI Special Agent Training Program, and have received further specialized training in investigating child pornography and child exploitation crimes. My training included courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants. I have observed and reviewed thousands of examples of child pornography (as defined in 18 U.S.C. § 2256(8)). I have participated in the execution of many search warrants which involved child exploitation and/or child pornography offenses and the search and seizure of computers and other digital devices. Further, I have served as the affiant on numerous search warrants and complaints relating to child exploitation investigations. I am a member of the Internet

SA LEDGERWOOD AFFIDAVIT - 1
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Crimes Against Children (ICAC) Task Force in the Western District of Washington, and
2  work with other federal, state, and local law enforcement personnel in the investigation
3  and prosecution of crimes involving the sexual exploitation of children.  I have attended
4  periodic seminars, meetings, and training.  I attended the ICAC Undercover
5  Investigations Training Program in Alexandria, Virginia, in June 2014 regarding child
6  exploitation.  I also attended the Crimes Against Children Conference in Dallas, Texas, in
7  August 2014, where I received training relating to child exploitation, including training in
8  the Ares Peer to Peer (P2P) file sharing program.  In September 2015, I received training
9  in the Emule (P2P) file sharing program.  I received a Bachelor of Science degree in
10  Criminal Justice with a minor in Sociology from the University of Missouri-St. Louis.

11        2.     I am submitting this affidavit in support of an application under Rule 41 of
12  the Federal Rules of Criminal Procedure for a warrant to search the three digital devices
13  identified below and in Attachment A (the "SUBJECT DEVICES"), which are currently
14  in the custody of Homeland Security Investigations, for the things specified in
15  Attachment B:

16              a.     HP Touchsmart computer Serial Number (SN) 3CR8511161
17              b.     White Samsung Galaxy Phone SN 256691517509643137;
18              c.     Seagate Hard Drive SN 5VJ2X1X5

19        3.     The warrant would authorize a search of the SUBJECT DEVICES and
20  forensic examination, for the purpose of identifying electronically stored data as
21  particularly described in Attachment B, for evidence, fruits, and instrumentalities of
22  violations of 18 U.S.C. § 2251(a) (Production of Child Pornography), 18 U.S.C. §§
23  2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. §
24  2252(a)(4)(B) (Possession of Child Pornography).

25        4.     The facts set forth in this Affidavit are based on my own personal
26  knowledge; knowledge obtained from other individuals during my participation in this
27  investigation, including other law enforcement officers; review of documents and records
28  related to this investigation; communications with others who have personal knowledge

SA LEDGERWOOD AFFIDAVIT - 2
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of the events and circumstances described herein; and information gained through my
2  training and experience.

3        5.      Because this affidavit is submitted for the limited purpose of establishing
4  probable cause in support of the application for a search warrant, it does not set forth
5  each and every fact that I or others have learned during the course of this investigation.  I
6  have set forth only the facts that I believe are relevant to the determination of probable
7  cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C.
8  § 2251(a) (Production of Child Pornography), 18 U.S.C. § 2252(a)(2) (Receipt or
9  Distribution of Child Pornography),  and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child
10  Pornography), will be found on the SUBJECT DEVICES.

11                              **II.  DEFINITIONS**

12        6.      The following definitions apply to this Affidavit:

13                          Internet Service Providers

14        a.      "Internet Service Providers" (ISPs), as used herein, are commercial
15  organizations that are in business to provide individuals and businesses access to the
16  internet.  ISPs provide a range of functions for their customers including access to the
17  Internet, web hosting, email, remote storage, and co-location of computers and other
18  communications equipment.  ISPs can offer a range of options in providing access to the
19  Internet including telephone based dial up, broadband based access via digital subscriber
20  line (DSL) or cable television, dedicated circuits, or satellite based subscription.  ISPs
21  typically charge a fee based upon the type of connection and volume of data, called
22  bandwidth, which the connection supports.  Many ISPs assign each subscriber an account
23  name – a user name or screen name, an "email address," an email mailbox, and a
24  personal password selected by the subscriber.  By using a computer equipped with a
25  modem, the subscriber can establish communication with an ISP over a telephone line,
26  through a cable system or via satellite, and can access the Internet by using his or her
27  account name and personal password.  ISPs maintain records pertaining to their
28  subscribers (regardless of whether those subscribers are individuals or entities).  These

1    records may include account application information, subscriber and billing information,

2    account access information (often times in the form of log files), email communications,

3    information concerning content uploaded and/or stored on or via the ISP's servers.

Internet Protocol (IP) Addresses

5          b.    "Internet Protocol address" or "IP address" refers to a unique

6    number used by a computer to access the Internet. An IP address looks like a series of

7    four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every

8    computer connected to the Internet must be assigned an IP address so that the Internet

9    traffic sent from, and directed to, that computer may be properly directed from its source

10    to its destination. Most ISPs control the range of IP addresses.

**III. The CyberTip and ESP Rabbit**

12          7.    This investigation arose from a CyberTip submitted to the National Center

13    for Missing and Exploited Children (NCMEC). NCMEC is a private non-profit

14    organization operating under a Congressional mandate to act as the nation's law

15    enforcement clearing house for information concerning online child sexual exploitation.

16    In partial fulfillment of that mandate, NCMEC operates a CyberTip line, a resource for

17    reporting online crimes against children. Electronic Service Providers (ESPs) report to

18    NCMEC, via the CyberTip line, whenever they discover that a subscriber has violated the

19    terms of service and/or their services have been used to transmit child pornography over

20    the Internet.

21          8.    The CyberTip giving rise to this investigation came from ESP Rabbit.

22    According to the ESP itself,

> Rabbit is about sharing your everyday. Watch your favorite shows with your
> friends, without being in the same room (or even the same city!). Collaborate with
> your coworkers when you're all on the road. Shop together for a birthday present
> for Mom, then sing her "happy birthday" with family far away. The possibilities
> are endless. Rabbit started with an idea: people sharing experiences online from
> wherever they are. We began with an app for Mac in February 2013. Then in
> August 2014, we launched a web-based version of Rabbit. In February 2-15, we
> were named one of the Top 10 Most Innovative Companies in Video by Fast

SA LEDGERWOOD AFFIDAVIT - 4
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Company.  And in October 2015, we launched an app for iOS.  But this is only the
2   start: we've got big plans.

3   ## IV. STATEMENT OF PROBABLE CAUSE

4       9.    In December 2017, Homeland Security Investigations (HSI) Blaine,
5   Washington received CyberTip report #25955849 from the Seattle Internet Crimes
6   Against Children (ICAC) Task Force.  The report indicated the ESP, Rabbit, reported that
7   one of its users uploaded several images of suspected child pornography to its website.
8   According to the CyberTip, the user was named, Lovr E, and has a screen/user name,
9   Lovr1.  The report also stated that the IP address of the device that uploaded these images
10  of suspected child pornography was 73.53.83.83 (the SUBJECT IP ADDRESS).
11  According to the CyberTip, that user uploaded approximately thirteen images depicting
12  suspected child pornography between November 26, 2017, and November 27, 2017, from
13  the SUBJECT IP ADDRESS.  Before submitting the CyberTip, employee(s) of Rabbit
14  examined each of these images of suspected of child pornography.

15      10.    I have reviewed these images of suspected child pornography and describe
16  each below:

17  **Filename: Lovr1_20171126_2.png**
    This color image depicts a prepubescent female (hereinafter the "child victim").
18  The child victim is nude and laying on her back visible from her waist to her
19  thighs.  The child victim's legs are spread apart and her unclothed genital area is
    the focal point of the image. An orange carrot is inserted into her vagina by what
20  appears to be an adult's hand. The child victim has no visible pubic hair and is
    very small in stature.  The child victim appears to be approximately 5 to 6 years
21  old.

22  **Filename: Lovr1_20171126_1.png**
23  This color image depicts a prepubescent female (hereinafter the "child victim").
    The child victim is completely nude and laying on her back.  She is fully visible.
24  The child is lying on a blue blanket with black squares.  The child's legs are
    spread apart.  A hairy adult arm and hand is holding a white sex toy in front of her
25  vagina.  There appears to be a shiny lubricant around the child victim's vaginal
    area. The child victim's vagina is not exposed due to the sex toy being placed in
26  front of or on it.  The child victim's breasts are exposed.  She has no visible pubic
27  hair, lacks muscular and breast development and is very small in stature.  The
    child victim appears to be approximately 5-6 years old.
28

11.     Rabbit also provided several pages of chats from the user Lovr1.  On November 26, 2017, and November 27, 2017, Lovr1 had a conversation with an unknown user discussing having an "ex's daughter" who appears to be a child named "[MV]".  During this chat, Lovr1 states, "i still get my ex's daughter all the time on weekends, [S.] is always like, oh shes a cutie", "its fucking cute seeing her cuddle with her, seeing [MV] wrap her legs around [S.], its soooo hot to think about".  Later in the conversation, Lovr1 states:  "mmm, could use her little sisters feet to rub on [MV's] pussy:)", "mmmm god yes, i love kissing [MV's] feet", "god why is little girl pussy the hottest thing on earth", "i bet its even more amazing making a little girl cummmm", "coat that ball with KY and get [MV] and her little sister on it together!!!", "god I want [MV] to be the one to teach them aboutr their pussies !!!".

12.     In addition to the above messages discussing the sexual abuse of MV, there is a series of messages in which Lovr1 recounts taking MV to a hotel over a weekend and then sends images purportedly of MV, in which MV's breasts and vagina are exposed.  These images were among the images flagged (and viewed) by Rabbit and included with the CyberTip.  They depict a prepubescent girl between six and nine years old next to a bed, in what appears to be a hotel room.

13.     A query of a publicly available database revealed the SUBJECT IP ADDRESS belonged to ISP Comcast Communications.

14.     On December 06, 2017, a Department of Homeland Security (DHS) administrative summons' was submitted to Comcast requesting subscriber information for the SUBJECT IP ADDRESS during the date and time the subject image files were uploaded.

15.     On December 08, 2017, Comcast provided the requested information.  During the date and time the subject image files were uploaded, the SUBJECT IP ADDRESS was assigned to C.P. at the residence located at 8575 Vinup Rd, Apt B, Lynden, Washington (the SUBJECT PREMISES).  Comcast revealed the IP History of the SUBJECT IP ADDRESS to have a lease grant date and time of October 20, 2017, at

SA LEDGERWOOD AFFIDAVIT - 6
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  19:56:45 UTC and a lease expiration of December 06, 2017, at 23:01:48 UTC.  The

2  SUBJECT IP ADDRESS is leased to C.P. with account number ending in 7795.

3      16.      Intelligence Research Specialist/Computer Forensic Analyst (IRS/CFA)

4  Gillie conducted records checks via a law enforcement database and found that C.P.

5  (DOB XX/XX/1989) has been associated with the SUBJECT PREMISES since June

6  2017.  I conducted a search via the Washington State Department of Licensing

7  (WSDOL) and learned that C.P. has a 2007 Hyundai, registered at the SUBJECT

8  PREMISES.  WSDOL also revealed C.P. was issued a Washington State driver's license

9  on September 12, 2017, with the SUBJECT PRIMISES listed as her address.

10     17.      On December 8, 2017, at approximately 3:30 p.m., SA Jesse Miller

11  conducted surveillance of the SUBJECT PREMISES and observed the following vehicle

12  parked in the driveway:  Hyundai bearing Washington State license plate BGV7348.

13  Records checks revealed that the vehicles are registered to C.P. at the SUBJECT

14  PREMISES.

15     18.      On December 14, 2017, I obtained a federal search warrant for the

16  SUBJECT PREMISES from Judge Paula L. McCandlis of the United States District

17  Court for the Western District of Washington.  A team of federal and local law

18  enforcement officers served this warrant just after 5:00 p.m. the same day.

19     19.      Upon encountering BARTELS inside the SUBJECT PREMISES, I

20  informed him that we had a warrant to search the apartment.  I conducted a search of

21  BARTELS and found a cellular phone.  After he used the restroom, BARTELS

22  accompanied me to my government car along with Det. Pauline Renick.  I asked

23  BARTELS if we could record our conversation with him, and he declined.  I read

24  BARTELS his Miranda rights, and BARTELS said he understood them.  I explained to

25  BARTELS that we obtained a search warrant to search his home and that we were

26  searching for evidence of child pornography.  BARTELS initially stated he did not know

27  anything about child pornography or Rabbit.  I asked BARTELS about a child named

28  "MV" and her mother "S."  I asked if these were fictitious people, and he said they were.

SA LEDGERWOOD AFFIDAVIT - 7
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    I explained to BARTELS that I would need to talk to his girlfriend and friends in order to

2    figure out if he were the person making child pornography and sharing it over Rabbit.

3    Our interview with BARTELS continued through the course of the evening.  At several

4    points, BARTELS inquired whether he should speak with an attorney.  Each time he

5    made such an inquiry, he was advised that the decision to ask for an attorney was his to

6    make.

7         20.    Just before 6:00 p.m., Det. Renick and I paused our conversation with

8    BARTELS so we could interview other witnesses.  Shortly thereafter, BARTELS drink

9    four twelve ounce Rolling Rock beers in quick succession.

10        21.    Det. Renick and I first conducted a recorded interview of C.P.  I explained

11   to C.P. why we were at her home.  I showed C.P. several images that were uploaded by

12   Lovr1, including the images taken in a hotel room described above.  She identified the

13   prepubescent girl pictured in the images as CV1.  She identified a second prepubescent

14   minor pictured in some of these images as CV1's sister.  Det. Renick and I then

15   interviewed MW at approximately 7:37 p.m.  MW likewise confirmed the identities of

16   CV1 and her sister after being shown the images shown to C.P.

17        22.    Upon completing the interview with MW, Det. Renick approached

18   BARTELS, who was in the kitchen of the SUBJECT PREMISES.  Det. Renick asked

19   BARTELS if he had thought about what had been happening that evening, and he said he

20   had.  She explained to him that she had just interviewed MW, who had identified CV1,

21   her sister, and the hotel room pictured in the images uploaded by Lovr1.  Det. Renick

22   asked BARTELS if he wanted to talk about what was going on, and he said yes.

23        23.    BARTELS again declined a request to record the conversation and simply

24   stated that he was aware whatever he said could be used against him.  BARTELS asked

25   Det. Renick what she wanted to know.  Det. Renick told BARTELS that she just wanted

26   to know the truth about what was going on.  She explained that it was not a matter of

27   whether or not the viewing and production of the child pornography happened but rather

28   why.  BARTELS stated that he was molested by his mother as a child.  He could not say

1   when it started because he was very young, and he could not recall when it stopped as he
2   had tried to put it out of his mind.  He continued that he never sought help for the abuse
3   and that he is not sure why he started looking at child pornography but he did in fact do
4   so.  He explained that child pornography was like a drug and that he could not quit
5   viewing it.

6        24.    When confronted with the images of CV1 taken in the hotel room,
7   BARTELS acknowledged taking the photos while in the room with CV1.  He explained
8   he had been staying in a hotel room in Bremerton, Washington, with CV1, CV1's sister,
9   CV1's mother, and MW.  BARTELS admitted that he had taken these photos of CV1
10   undressing and in the nude and then traded them with others on Rabbit.  When Det.
11   Renick asked him how many times he had traded these images, BARTELS said he was
12   unsure but guessed it to be three to five times.  BARTELS said he had taken the photos
13   with his cell phone.  BARTELS also acknowledged being the Rabbit user that was the
14   subject of the CyberTip and confirmed engaging in the chats described above.

15        25.    BARTELS was arrested and transported to the Bellingham police
16   department just after 10:00 p.m.  While being transported by Special Agent Shaun Smith,
17   BARTELS stated that he was glad he was caught because it felt like a big weight had
18   been lifted.

19        26.    At approximately 10:45 p.m., Det. Renick and I asked BARTELS if he
20   would continue speaking with us.  He again declined our request to record our
21   conversation but agreed to speak further.  BARTELS explained that he took the
22   photographs of CV1 undressing at a hotel in Bremerton, which he believed might be the
23   Quality Inn.  He stated he took approximately five photographs of CV1 without her
24   knowledge or the knowledge of anyone else in the room.  BARTELS also stated he
25   captured a webcam video of CV1 in her underwear on at least one other occasion while
26   he was chatting with another individual online.  BARTELS stated these were the only
27   two times he had ever attempted to capture a pornographic image or video of CV1.

28

SA LEDGERWOOD AFFIDAVIT - 9
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27.     After confirming that he had shared images of CV1 using Rabbit and another forum, I asked BARTELS why he started taking pornographic pictures of CV1. He explained, "Because of chats and talking to people, like a heroin addict once you take a hit."

28.     Det. Renick asked BARTELS if he ever thought he would get into trouble and he said yes. He explained that anytime he was talking with someone online, he thought he could be talking to police.

29.     BARTELS said he looked at child pornography a couple of times a month and masturbates to it "maybe 2 outta 20 times." He stated that he possessed a couple hundred images and videos of child pornography.

30.     Among the items seized from the SUBJECT PREMISES was a laptop computer that belongs to BARTELS. During the forensic preview of this device, CFA Tom Gillie was able to confirm that it contained several of the same images that were the subject of the Rabbit CyberTip.

31.     Forensic analysis of the devices seized from the SUBJECT PREMISES has thus far revealed the presence of thousands of images and videos of minors engaged in sexually explicit conduct.

32.     On December 15, 2017, I transported BARTELS from the Whatcom County jail to the federal courthouse in Seattle. I advised him that I was using a recording device to record our conversation on the way down to Seattle. I reminded him of his *Miranda* rights, and he stated he understood them. During our conversation, he confirmed nearly all of the information he provided the previous evening as well as stating his desire to apologize for what he done to CV1.

33.     A Grand Jury sitting in the Western District of Washington has returned an indictment charging BARTELS with one count each of Production of Child Pornography in violation of 18 U.S.C. § 2251(a), Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

SA LEDGERWOOD AFFIDAVIT - 10
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34.     On December 18, 2017, CFA Gillie and I interviewed N.F. and R.F. of Ferndale, Washington.  N.F. stated BARTELS moved into the residence on or about December 28, 2016, and left the residence in April of 2017.  N.F. stated her ten-year-old niece disclosed that BARTELS had been inappropriately touching her nine-year-old cousin.

35.     N.F. stated she called 911 and reported the alleged incident to police.  N.F. stated she was instructed by police to take her family and leave the residence without disclosing to BARTELS the reason.  N.F. stated she left with her family for two weeks.  N.F. stated BARTELS attempted to make contact with her regarding why she left, and she did not engage in conversation with BARTELS.  N.F. stated a sergeant with Ferndale police called BARTELS and requested BARTELS come in for an interview.  According to N.F., BARTELS did not show up for the interview and abandoned all his property at her residence, including two of the SUBJECT DEVICES—the Samsung cell phone and HP Touchsmart computer.  N.F. stated she was told BARTELS left the Whatcom County area.

36.     After BARTELS left the area and abandoned his property, N.F. and her family returned to their residence.  R.F. said that, due to the allegations made against BARTELS, he decided to clone BARTELS's computer (the HP Touchsmart) using a Seagate Hard Drive, the third of the SUBJECT DEVICES.  The hard drive has a label made by R.F. that says, "CLONE OF JAMIE'S COMPUTER".  It is my understanding that R.F. has the technical expertise to clone a computer based on his employment.

37.     N.F. and R.F. allowed CFA Gillie and I to take the SUBJECT DEVICES for forensic analysis.  Because BARTELS abandoned the HP Touchsmart and Samsung cell phone, I do not believe a warrant is required to seize and search the SUBJECT DEVICES.  I am nonetheless seeking this warrant out of an abundance of caution.

## VI. TECHNICAL BACKGROUND

38.     Based on my training and experience, when an individual communicates through the Internet, the individual leaves an IP address which identifies the individual

SA LEDGERWOOD AFFIDAVIT - 11
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   user by account and ISP (as described above).  When an individual is using the Internet,
2   the individual's IP address is visible to administrators of websites they visit.  Further, the
3   individual's IP address is broadcast during most Internet file and information exchanges
4   that occur.

5       39.     Based on my training and experience, I know that most ISPs provide only
6   one IP address for each residential subscription.  I also know that individuals often use
7   multiple digital devices within their home to access the Internet, including desktop and
8   laptop computers, tablets, and mobile phones.  A device called a router is used to connect
9   multiple digital devices to the Internet via the public IP address assigned (to the
10  subscriber) by the ISP.  A wireless router performs the functions of a router but also
11  includes the functions of a wireless access point, allowing (wireless equipped) digital
12  devices to connect to the Internet via radio waves, not cables.  Based on my training and
13  experience, today many residential Internet customers use a wireless router to create a
14  computer network within their homes where users can simultaneously access the Internet
15  (with the same public IP address) with multiple digital devices.

16      40.     Based on my training and experience and information provided to me by
17  computer forensic agents, I know that data can quickly and easily be transferred from one
18  digital device to another digital device.  Data can be transferred from computers or other
19  digital devices to internal and/or external hard drives, tablets, mobile phones, and other
20  mobile devices via a USB cable or other wired connection.  Data can also be transferred
21  between computers and digital devices by copying data to small, portable data storage
22  devices including USB (often referred to as "thumb") drives, memory cards (Compact
23  Flash, SD, microSD, etc.) and memory card readers, and optical discs (CDs/DVDs).

24      41.     As outlined above, residential Internet users can simultaneously access the
25  Internet in their homes with multiple digital devices.  Also explained above is how data
26  can quickly and easily be transferred from one digital device to another through the use
27  of wired connections (hard drives, tablets, mobile phones, etc.) and portable storage
28  devices (USB drives, memory cards, optical discs).  Therefore, a user could access the

SA LEDGERWOOD AFFIDAVIT - 12
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 Internet using their assigned public IP address, receive, transfer or download data, and
2 then transfer that data to other digital devices which may or may not have been connected
3 to the Internet during the date and time of the specified transaction.

4      42.    Based on my training and experience, I have learned that the computer's
5 ability to store images and videos in digital form makes the computer itself an ideal
6 repository for child pornography. The size of hard drives used in computers (and other
7 digital devices) has grown tremendously within the last several years. Hard drives with
8 the capacity of four (4) terabytes (TB) are not uncommon. These drives can store
9 thousands of images and videos at very high resolution.

10      43.    Based on my training and experience, collectors and distributors of child
11 pornography also use online resources to retrieve and store child pornography, including
12 services offered by companies such as Google, Yahoo, Apple, and Dropbox, among
13 others. The online services allow a user to set up an account with a remote computing
14 service that provides email services and/or electronic storage of computer files in any
15 variety of formats. A user can set up an online storage account from any computer with
16 access to the Internet. Evidence of such online storage of child pornography is often
17 found on the user's computer. Even in cases where online storage is used, however,
18 evidence of child pornography can be found on the user's computer in most cases.

19      44.    As is the case with most digital technology, communications by way of
20 computer can be saved or stored on the computer used for these purposes. Storing this
21 information can be intentional, i.e., by saving an email as a file on the computer or saving
22 the location of one's favorite websites in, for example, "bookmarked" files. Digital
23 information can also be retained unintentionally, e.g., traces of the path of an electronic
24 communication may be automatically stored in many places (e.g., temporary files or ISP
25 client software, among others). In addition to electronic communications, a computer
26 user's Internet activities generally leave traces or "footprints" and history files of the
27 browser application used. A forensic examiner often can recover evidence suggesting
28 whether a computer contains wireless software, and when certain files under investigation

SA LEDGERWOOD AFFIDAVIT - 13
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   were uploaded or downloaded.  Such information is often maintained indefinitely until
2   overwritten by other data.

3       45.    Based on my training and experience, I have learned that producers of child
4   pornography can produce image and video digital files from the average digital camera,
5   mobile phone, or tablet.  These files can then transferred from the mobile device to a
6   computer or other digital device, using the various methods described above.  The digital
7   files can then be stored, manipulated, transferred, or printed directly from a computer or
8   other digital device.  Digital files can also be edited in ways similar to those by which a
9   photograph may be altered; they can be lightened, darkened, cropped, or otherwise
10  manipulated.  As a result of this technology, it is relatively inexpensive and technically
11  easy to produce, store, and distribute child pornography.  In addition, there is an added
12  benefit to the child pornographer in that this method of production is a difficult trail for
13  law enforcement to follow.

14      46.    As part of my training and experience, I have become familiar with the
15  structure of the Internet, and I know that connections between computers on the Internet
16  routinely cross state and international borders, even when the computers communicating
17  with each other are in the same state.   Individuals and entities use the Internet to gain
18  access to a wide variety of information; to send information to, and receive information
19  from, other individuals; to conduct commercial transactions; and to communicate via
20  email.

21      47.    Based on my training and experience, I know that cellular mobile phones
22  (often referred to as "smart phones") have the capability to access the Internet and store
23  information, such as images and videos.  As a result, an individual using a smart phone
24  can send, receive, and store files, including child pornography, without accessing a
25  personal computer or laptop.  An individual using a smart phone can also easily connect
26  the device to a computer or other digital device, via a USB or similar cable, and transfer
27  data files from one digital device to another.

28

SA LEDGERWOOD AFFIDAVIT - 14
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

48.     As set forth herein and in Attachment B to this Affidavit, I seek permission to search for and seize evidence, fruits, and instrumentalities of the above-referenced crimes that might be found on the SUBJECT DEVICES in whatever form they are found. It has been my experience that individuals involved in child pornography often prefer to store images of child pornography in electronic form.  The ability to store images of child pornography in electronic form makes digital devices, examples of which are enumerated in Attachment B to this Affidavit, an ideal repository for child pornography because the images can be easily sent or received over the Internet.  As a result, one form in which these items may be found is as electronic evidence stored on a digital device.

49.     Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals who have a sexualized interest in children and depictions of children:

a.     They may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.     They may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media.  Such individuals often times use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.  These individuals may keep records, to include names, contact information, and/or dates of these interactions, of the children they have attempted to seduce, arouse, or with whom they have engaged in the desired sexual acts.

c.     They often maintain any "hard copies" of child pornographic material that is, their pictures, films, video tapes, magazines, negatives, photographs,

SA LEDGERWOOD AFFIDAVIT - 15
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of

2  their home or some other secure location.  These individuals typically retain these "hard

3  copies" of child pornographic material for many years, as they are highly valued.

4          d.     Likewise, they often maintain their child pornography collections

5  that are in a digital or electronic format in a safe, secure and private environment, such as

6  a computer and surrounding area.  These collections are often maintained for several

7  years and are kept close by, often at the individual's residence or some otherwise easily

8  accessible location, to enable the owner to view the collection, which is valued highly.

9  They also may opt to store the contraband in cloud accounts. Cloud storage is a model of

10  data storage where the digital data is stored in logical pools, the physical storage can span

11  multiple servers, and often locations, and the physical environment is typically owned

12  and managed by a hosting company. Cloud storage allows the offender ready access to

13  the material from any device that has an Internet connection, worldwide, while also

14  attempting to obfuscate or limit the criminality of possession as the material is stored

15  remotely and not on the offender's device.

16          e.     They also may correspond with and/or meet others to share

17  information and materials; rarely destroy correspondence from other child pornography

18  distributors/collectors; conceal such correspondence as they do their sexually explicit

19  material; and often maintain lists of names, addresses, and telephone numbers of

20  individuals with whom they have been in contact and who share the same interests in

21  child pornography.

22          f.     They generally prefer not to be without their child pornography for

23  any prolonged time period.  This behavior has been documented by law enforcement

24  officers involved in the investigation of child pornography throughout the world.

25          g.     E-mail itself provides a convenient means by which individuals can

26  access a collection of child pornography from any computer, at any location with Internet

27  access.  Such individuals therefore do not need to physically carry their collections with

28  them but rather can access them electronically.   Furthermore, these collections can be

SA LEDGERWOOD AFFIDAVIT - 16
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   stored on email "cloud" servers, which allow users to store a large amount of material at

2   no cost, without leaving any physical evidence on the users' computer(s).

3        50.    In addition to offenders who collect and store child pornography, law

4   enforcement has encountered offenders who obtain child pornography from the internet,

5   view the contents and subsequently delete the contraband, often after engaging in self-

6   gratification.  In light of technological advancements, increasing Internet speeds and

7   worldwide availability of child sexual exploitative material, this phenomenon offers the

8   offender a sense of decreasing risk of being identified and/or apprehended with quantities

9   of contraband. This type of consumer is commonly referred to as a 'seek and delete'

10  offender, knowing that the same or different contraband satisfying their interests remain

11  easily discoverable and accessible online for future viewing and self-gratification.  I

12  know that, regardless of whether a person discards or collects child pornography he/she

13  accesses for purposes of viewing and sexual gratification, evidence of such activity is

14  likely to be found on computers and related digital devices, including storage media, used

15  by the person.  This evidence may include the files themselves, logs of account access

16  events, contact lists of others engaged in trafficking of child pornography, backup files,

17  and other electronic artifacts that may be forensically recoverable.

18       51.    Given the above-stated facts and based on my knowledge, training and

19  experience, along with my discussions with other law enforcement officers who

20  investigate child exploitation crimes, I believe that BARTELS likely has a sexualized

21  interest in children and depictions of children.  I therefore believe that evidence of child

22  pornography is likely to be found on the SUBJECT DEVICES.

23       52.    Based on my training and experience, and that of computer forensic agents

24  that I work and collaborate with on a daily basis, I know that every type and kind of

25  information, data, record, sound or image can exist and be present as electronically stored

26  information on any of a variety of computers, computer systems, digital devices, and

27  other electronic storage media.  I also know that electronic evidence can be moved easily

28  from one digital device to another.

SA LEDGERWOOD AFFIDAVIT - 17
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

53.     Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I know that in some cases the items set forth in Attachment B may take the form of files, documents, and other data that is user-generated and found on a digital device.  In other cases, these items may take the form of other types of data - including in some cases data generated automatically by the devices themselves.

54.     Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I believe there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

a.     Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost.  A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator.  For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user.  The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them.  This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as importantly, may include evidence of the identity of the device user, and when and how the device was used.  Most often, some affirmative action is necessary to delete ESI.  And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

b.     Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what is has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and

1 virtual memory "swap" or paging files.  Computer users typically do not erase or delete
2 this evidence, because special software is typically required for that task.  However, it is
3 technically possible for a user to use such specialized software to delete this type of
4 information - and, the use of such special software may itself result in ESI that is relevant
5 to the criminal investigation.  HSI agents in this case have consulted on computer
6 forensic matters with law enforcement officers with specialized knowledge and training
7 in computers, networks, and Internet communications.  In particular, to properly retrieve
8 and analyze electronically stored (computer) data, and to ensure accuracy and
9 completeness of such data and to prevent loss of the data either from accidental or
10 programmed destruction, it is necessary to conduct a forensic examination of the
11 computers.  To effect such accuracy and completeness, it may also be necessary to
12 analyze not only data storage devices, but also peripheral devices which may be
13 interdependent, the software to operate them, and related instruction manuals containing
14 directions concerning operation of the computer and software.

**VII. SEARCH AND/OR SEIZURE OF DIGITAL DEVICES**

16        55.        In addition, based on my training and experience and that of computer
17 forensic agents that I work and collaborate with on a daily basis, I know that in most
18 cases it is impossible to successfully conduct a complete, accurate, and reliable search for
19 electronic evidence stored on a digital device during the physical search of a search site
20 for a number of reasons, including but not limited to the following:

21               a.        Technical Requirements:  Searching digital devices for criminal
22 evidence is a highly technical process requiring specific expertise and a properly
23 controlled environment.  The vast array of digital hardware and software available
24 requires even digital experts to specialize in particular systems and applications, so it is
25 difficult to know before a search which expert is qualified to analyze the particular
26 system(s) and electronic evidence found at a search site.  As a result, it is not always
27 possible to bring to the search site all of the necessary personnel, technical manuals, and
28 specialized equipment to conduct a thorough search of every possible digital

SA LEDGERWOOD AFFIDAVIT - 19
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  device/system present.  In addition, electronic evidence search protocols are exacting

2  scientific procedures designed to protect the integrity of the evidence and to recover even

3  hidden, erased, compressed, password-protected, or encrypted files.  Since ESI is

4  extremely vulnerable to inadvertent or intentional modification or destruction (both from

5  external sources or from destructive code embedded in the system such as a "booby

6  trap"), a controlled environment is often essential to ensure its complete and accurate

7  analysis.

8       b.      Volume of Evidence:  The volume of data stored on many digital

9  devices is typically so large that it is impossible to search for criminal evidence in a

10  reasonable period of time during the execution of the physical search of a search site.  A

11  single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A

12  single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000

13  double-spaced pages of text. Computer hard drives are now being sold for personal

14  computers capable of storing up to four terabytes (4,000 gigabytes of data.)  Additionally,

15  this data may be stored in a variety of formats or may be encrypted (several new

16  commercially available operating systems provide for automatic encryption of data upon

17  shutdown of the computer).

18       c.      Search Techniques:  Searching the ESI for the items described in

19  Attachment B may require a range of data analysis techniques.  In some cases, it is

20  possible for agents and analysts to conduct carefully targeted searches that can locate

21  evidence without requiring a time-consuming manual search through unrelated materials

22  that may be commingled with criminal evidence.   In other cases, however, such

23  techniques may not yield the evidence described in the warrant, and law enforcement

24  personnel with appropriate expertise may need to conduct more extensive searches, such

25  as scanning areas of the disk not allocated to listed files, or peruse every file briefly to

26  determine whether it falls within the scope of the warrant.

27       56.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

28  Rules of Criminal Procedure, the warrant I am applying for will permit imaging or

SA LEDGERWOOD AFFIDAVIT - 20
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    otherwise copying all data contained on the SUBJECT DEVICES, and will specifically

2    authorize a review of the media or information consistent with the warrant.

3         57.     In accordance with the information in this affidavit, law enforcement

4    personnel will execute the search of the SUBJECT DEVICE/S pursuant to this warrant as

5    follows:

6         58.     Securing the Data: In order to examine the ESI in a forensically sound

7    manner, law enforcement personnel with appropriate expertise will attempt to produce a

8    complete forensic image, if possible and appropriate, of the SUBJECT DEVICES. Law

9    enforcement will only create an image of data physically present on or within the

10   SUBJECT DEVICE/S. Creating an image of the SUBJECT DEVICE/S will not result in

11   access to any data physically located elsewhere. However, SUBJECT DEVICES that

12   have previously connected to devices at other locations may contain data from those

13   other locations.

14        59.     Searching the Forensic Images: Searching the forensic images for the items

15   described in Attachment B may require a range of data analysis techniques. In some

16   cases, it is possible for agents and analysts to conduct carefully targeted searches that can

17   locate evidence without requiring a time-consuming manual search through unrelated

18   materials that may be commingled with criminal evidence. In other cases, however, such

19   techniques may not yield the evidence described in the warrant, and law enforcement

20   may need to conduct more extensive searches to locate evidence that falls within the

21   scope of the warrant. The search techniques that will be used will be only those

22   methodologies, techniques and protocols as may reasonably be expected to find, identify,

23   segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to

24   this affidavit.

## VIII. CONCLUSION

26        60.     Based on the foregoing, I believe there is probable cause that evidence,

27   fruits, and instrumentalities of violations of 18 U.S.C. § 2251(a) (Production of Child

28   Pornography), 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography),

SA LEDGERWOOD AFFIDAVIT - 21
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography), are located on/in the

2    SUBJECT DEVICES as more fully described in Attachment A to this Affidavit, I

3    therefore request that the court issue a warrant authorizing a search of the SUBJECT

4    DEVICES specified in Attachment A for the items more fully described in Attachment B.

5

6

7

8    Toby Ledgerwood, Affiant
     Special Agent

9    Department of Homeland Security
     Homeland Security Investigations

10

11   SUBSCRIBED and SWORN to before me this 2ʳ day of February, 2018.

12

13

14

15   PAULA L. MCCANDLIS
     United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

SA LEDGERWOOD AFFIDAVIT - 22
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A

## Description of Property to be Searched

The SUBJECT DEVICES, more particularly described below, which are currently in the custody of Homeland Security Investigations in Blaine, Washington:

a.    HP Touchsmart computer Serial Number (SN) 3CR8511161

b.    White Samsung Galaxy Phone SN 256691517509643137

c.    Seagate Hard Drive SN 5VJ2X1X5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2251(a) (Production of Child Pornography, 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography), and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES:

1. Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media or other evidence of the creation of such visual depictions.

2. Evidence of the installation and use of P2P software, and any associated logs, saved user names and passwords, shared files, and browsing history;

3. Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4. All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5. Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6. Any non-digital recording devices and non-digital media capable of storing images and videos.

7. Digital devices and/or their components, which include, but are not limited to:

    a. Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above;

    b. Any digital devices used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

ATTACHMENT B - 1
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        c.    Any magnetic, electronic, or optical storage device capable of
2 storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or
3 memory buffers, smart cards, PC cards, memory sticks, flashdrives, USB/thumb drives,
4 camera memory cards, media cards, electronic notebooks, and personal digital assistants;

5        d.    Any documentation, operating logs and reference manuals regarding
6 the operation of the digital device or software;

7        e.    Any applications, utility programs, compilers, interpreters, and other
8 software used to facilitate direct or indirect communication with the computer hardware,
9 storage devices, or data to be searched;

10        f.    Any physical keys, encryption devices, dongles and similar physical
11 items that are necessary to gain access to the computer equipment, storage devices or
12 data; and

13        g.    Any passwords, password files, test keys, encryption codes or other
14 information necessary to access the computer equipment, storage devices or data;

15    8.    Evidence of who used, owned or controlled any seized digital device(s) at
16 the time the things described in this warrant were created, edited, or deleted, such as logs,
17 registry entries, saved user names and passwords, documents, and browsing history;

18    9.    Evidence of malware that would allow others to control any seized digital
19 device(s) such as viruses, Trojan horses, and other forms of malicious software, as well
20 as evidence of the presence or absence of security software designed to detect malware;
21 as well as evidence of the lack of such malware;

22    10.    Evidence of the attachment to the digital device(s) of other storage devices
23 or similar containers for electronic evidence;

24    11.    Evidence of counter-forensic programs (and associated data) that are
25 designed to eliminate data from a digital device;

26    12.    Evidence of times the digital device(s) was used;

27    13.    Any other ESI from the digital device(s) necessary to understand how the
28 digital device was used, the purpose of its use, who used it, and when.

ATTACHMENT B - 2
USAO #2017R01278

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       14.    Records and things evidencing the use of the IP address 73.53.83.83 (the

2    SUBJECT IP ADDRESS) including:

3          a.    Routers, modems, and network equipment used to connect

4    computers to the Internet;

5          b.    Records of Internet Protocol (IP) addresses used;

6          c.    Records of Internet activity, including firewall logs, caches, browser

7    history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

8    entered into any Internet search engine, and records of user-typed web addresses.

9

10    **The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such**

11    **digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for**

12    **evidence, instrumentalities, or fruits of the aforementioned crimes.**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 3
USAO #2017R01278